UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA JUAREZ-ATILANO<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant.* | Civil Action No.: 16-cv-09438 (PGS)(LHG)<br><br>MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter is before the Court on the motion for summary judgment (ECF No. 18) by Defendant, the United States of America, or in the alternative, a motion for partial summary judgment (ECF No. 18).

I.

*Procedural History*

Plaintiff, Maria Juarez-Atilano, is a resident of Wisconsin. Defendant, the United States of America is a party to this case as Dr. John Batich, M.D. of Ocean Health Initiatives, Inc., ("OHI") a Federally-Qualified Health Center provided care and treatment to Ms. Juarez-Atilano. On or about June 11, 2012, Plaintiff, came under the care and treatment of Ocean Health Initiatives, Inc., ("OHI") a Federally-Qualified Health Center. (Def. Answer at ¶2). According to Plaintiff, she had previously given birth via cesarean section at Kimball Medical Center on approximately June 1, 2008 with her care and treatment being provided by OHI through its medical professionals. (Complaint, ECF No. 1, at ¶5).

On February 3, 2013, Plaintiff went into labor and was admitted to Kimball Medical Center located in Lakewood, New Jersey, under the care and treatment of OHI's medical professional, Dr. John Batich, M.D. (*Id.* at ¶ 6-7). After having previously given birth at Kimball Medical Center via cesarean section on June 1, 2008, Dr. Batich, at the request and with the consent of Ms. Juarez Atilano, allowed her to undergo labor after cesarean delivery. (*Id.* at ¶5, 8). According to the Complaint, complications occurred, including feta bradycardia and a possible uterine rupture, and Dr. Batich, with the help of his assistant Dr. Flavius M. Thompson, M.D., performed an emergency cesarean section. (*Id.* at ¶ 9). The baby, Brandon Oswaldo Silva, was delivered and showed no signs of life, and after twenty-two minutes of resuscitation, was pronounced dead. (*Id.*).

On January 21, 2015, Plaintiff filed a complaint against Dr. Batich in New Jersey Superior Court, Ocean Vicinage, but the United States Attorney's office filed a Notice of Removal to federal court, with the United States of America named as a defendant rather than Dr. Batich on September 17, 2015. (*Id.* at ¶ 10-12). A week later, the United States filed a motion to dismiss for lack of jurisdiction, which this Court Granted on November 20, 2015, and remanded this action to Superior Court of New Jersey, Law Division, Ocean County under docket number OCN-L-15-00218. (*Id.* at ¶ 13).

According to the present complaint, Plaintiff filed a Federal Torts Claim Notice three days later, and in response, the Department of Health and Human Services sent a letter dated January 4, 2016 requesting certain information. (*Id.* at ¶ 13-14). According to Plaintiff, the Department of Health and Human Services denied Plaintiff's claim on July 19, 2016. (It is unknown what happened to the case remanded back to the Superior Court in Ocean County.) (*Id.* at ¶15).

Plaintiff filed the instant complaint on December 23, 2016.

*Facts*

At all times relevant to this lawsuit, Dr. Batich was an employee of Ocean Health Initiatives, Inc ("OHI"). (Def. SOF ¶5). OHI is a private, non-profit, charitable, ambulatory care facility, licensed by the State of New Jersey, that provides a broad range of health services—regardless of a patient's insurance status or ability to pay—to a largely medically under-served population in Ocean County, New Jersey. (*Id.* at ¶6). However, Plaintiff denies that OHI qualifies as a true nonprofit charity for the purposes of NJCIA. (Pl. Response to Def. SOF at ¶ 6).

OHI is, as in 2012 and 2013 a federally qualified health center (hereinafter "FQHC"), and eligible for malpractice coverage under the Federal Tort Claims Act (hereinafter "FTCA"). OHI attained FQHC status in 2006 and the FTCA has applied since. (Def. SOF at ¶ 7) In 2012 and 2013, OHI operated out of two facilities: (1) 101 Second Street, Lakewood, NJ, and (2) 301 Lakehurst Road, Toms River, New Jersey. (*Id.* at ¶ 8). These facilities offered an array of medical services in 2012, including dental care, family medicine, behavioral health services, internal medicine, ob/gyn services, pediatrics, podiatry, and social services. (*Id.*). OHI also operates out of a Mobile Medical Unit to provide services within its area and has added five New Jersey locations since this alleged incident. (*Id.* at ¶ 9-12).

OHI's certificate of incorporation describes OHI's non-profit status and purposes as follows:

> SECOND: The purposes for which the Corporation are formed are charitable, educational and scientific in nature within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any future Internal Revenue Law (the "Code") and include, without limitation:
> To establish and operate indefinitely a health center or centers, and to render primary and ancillary health care and treatment services to individuals who are in need of such services.

> To solicit and receive grants, contracts and funds from federal, state and local government agencies, foundations or any other sources, to further the corporate purposes.
> To borrow money, contract, debts, issue notes and secure payment of the performances of its obligations and to do all other acts necessary or expedient for the administration of the affairs and attainment of the purposes of the Corporation.
> To engage in any other activity undertaken to promote the purposes of the Corporation, which may be lawfully undertaken by the Corporation under the New Jersey Non Profit Corporation Act.
> Nothing herein shall authorize the Corporation to carry on any activities not permitted to be carried on by a corporation exempt from federal income tax under Section 501 (c)(3) of the Internal Revenue Code of 1986, as amended (or corresponding provision of any future United States Internal Revenue Law) or by a corporation contributions to which are deductible under Section 170(c)(2) of the Revenue Code of 1986, as amended (or corresponding provision of any future United States internal revenue law).

(*Id.* at ¶ 13.).

OHI's certificate of incorporation states:

> NINTH: The Corporation is not formed for pecuniary profit or for financial gain and no part of its assets, income, net earnings or profit shall be distributed to or inure to the benefit of any private individual. Reasonable compensation, however, may be paid for services rendered to or for the Corporation in furtherance of one or more of its purposes. No trustee, officer or employee of the Corporation or any private individual shall be entitled to share in the distribution of any of the corporate assets on dissolution of the Corporation.

(*Id.* at ¶14.).

OHI's bylaws in effect during 2012 and 2013, and presently in effect, use similar language as OHI's certificate of incorporation by stating OHI's non-profit status and purposes, as the bylaws in effect during 2010 and the bylaws in effect today state the following:

> The purposes for which the Corporation are formed are charitable, educational and scientific in nature within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any future Internal Revenue Law (the "Code") and to carry out the purposes set forth in the Certificate of Incorporation, as amended, and include, without limitation:

> a. To establish and operate indefinitely a health center or centers, and to render primary and ancillary health care and treatment services to individuals who are in need of such services;
> b. To solicit and receive grants, contracts and funds from federal, state and local government agencies, foundations or any other sources, to further the corporate purposes;
> c. To borrow money, contract, debts, issue notes and secure payment of the performances of its obligations and to do all other acts necessary or expedient for the administration of the affairs and attainment of the purposes of the Corporation; and
> d. To engage in any other activity undertaken to promote the purposes of the Corporation, which may be lawfully undertaken by the Corporation under the New Jersey Nonprofit Corporation Act.

OHI's mission statement is set forth on its website. It provides:

> Ocean Health Initiatives, Inc. (OHI) is dedicated to providing quality, accessible, and comprehensive primary health care to the residents of Ocean County; regardless of economic status. We accomplish this mission by promoting healthy behaviors and lifestyle choices through educational outreach and providing the tools needed to maintain optimum physical and emotional health.

(Def. SOF at ¶16).

OHI is not a free clinic. (Pl. SOF at ¶ 1, ECF No. 20). OHI uses a sliding discount policy to determine appropriate patient discounts, but a patient will not be turned away due to their inability to pay. (Def. SOF. at ¶17-18). This is required by the federal government to maintain their status as an FQHC. (Pl. SOF at ¶ 4). All these policies have been in effect since OHI's inception, were in effect in 2012 and 2013, and continue to remain in effect. (Def. SOF at ¶ 19). OHI's by-laws establish a board of directors to manage and control the affairs of the corporation, and the board complies with FQHC Regulations. (*Id.* at ¶ 38-39). This is required by the FQHC. (Pl. Response to Def. SOF at ¶ 38-39). The members of the Board serve voluntarily. (Def. SOF at ¶ 38-39). However, OHI had salaried CEO, CFO, and CMO, in addition to paid physicians and staff, during 2012 and 2013. (Pl. SOF at ¶ 5).

According to Defendant, approximately 38% of OHI's patients in 2012 did not have health insurance coverage. (*Id.* at ¶ 20). Defendant asserts that approximately 42% did not have health insurance coverage in 2013, and they estimate that the figures decreased to approximately 21% in 2017, because of New Jersey's expansion of Medicaid. (*Id.*). Moreover, Defendant claims that undocumented aliens comprise a large percentage of OHI's patients with no insurance coverage, and Defendant's goal is to provide them with appropriate services. (*Id.* at ¶ 21-22). Likewise, Defendants aver that they do not refer unpaid patient accounts to a collection agency, nor does OHI file suit to collect unpaid patient accounts. (*Id.* at ¶ 24).

OHI offers a variety of patient services, including primary care, preventive care, enabling health services, and additional health services as appropriate and necessary, and provides these services directly or through established arrangements or referrals. (*Id.* at ¶ 25-26). Defendants claim these services include free hemoglobin A1c (diabetes) testing for uninsured patients, free pregnancy tests, and free screenings at health events, including free blood pressure tests, free HIV tests, and free skin cancer screenings. (*Id.* at ¶ 27). OHI has an on-call answering service that ensures professional coverage for all medical emergencies after OHI's health centers have closed for the day. (*Id.* at ¶ 28). However, OHI does not operate on a 24/7 schedule. (Pl. SOF at ¶ 3).

The Health Services and Resources Administration (hereinafter "HRSA") requires federally qualified health centers to report on their yearly performance, and OHI submitted reports for the years 2012 and 2013. (Def. SOF at ¶ 29). In 2012, OHI had serviced 21,890 patients, 9,428 patients had annual income that was 100% or less of the federal poverty level, 225 patients were homeless, and OHI received private grants totaling $1,393,250. (*Id.* at ¶30). In 2013, OHI serviced 22,265 patients, 9,977 patients had annual income that was 100% or less of the federal poverty

level, 262 patients were homeless, and OHI received private grants totaling $1,385,000 (*Id.* at ¶ 31).

As a FQHC, OHI receives an annual grant, known as a Section 330 Grant, from HRSA, and Defendant claims that the money from the Section 330 grant may only be used to pay for the cost of operations. (*Id.* at ¶ 32-33). In 2012, HRSA's grants accounted for 5.8% of OHI's total revenue for the year, and in 2013 the grants accounted for 7.2%. (Def. SOF at ¶ 35-36). OHI obtains other revenue from other sources, including patient revenue and other grant funding, to support its programs. (*Id.* at ¶ 34).

In October 2003, the Internal Revenue Service determined that OHI was exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code (hereinafter "IRS") and became classified as a public charity under section 509(a)(1). (*Id.* at ¶ 40-41). OHI's exemption and status have continued to this day. (*Id.* at ¶ 42). Each year, OHI files a Form 990, Return of Organization Exempt from Income Tax, with the IRS. (*Id.* at ¶43). The 2012 tax return identified OHI's mission as follows: "providing health care services to medically underserved populations," and that OHI "provides health services to the medically underserved population in all of Ocean County, NJ. (*Id.* at ¶ 45). The statements on the tax return in 2013 were substantially similar. (*Id.*). Plaintiffs maintain that despite the IRS findings, OHI is still not a nonprofit charity under NJCIA. (Pl. Response to Def. SOF at ¶ 40-45).

HRSA requires FQHCs, such as OHI, to undergo an annual independent financial audit. (*Id.* at ¶ 46). The audited statements show that OHI's total net revenue in 2012 was $14,572,903. (*Id.* at ¶47). Out of that total, the net patient service revenue, which is comprised of is comprised of payments from Medicaid, Medicare, private insurance, and payments from uninsured patients including self-pay and charity care payments from the State of New Jersey Hospital Care Payment

Assistance Program, was $10,838,251. (Def. SOF at ¶ 47-49). The break down of patient revenue for 2012 is as follows:

| Source | Amount | Percentage of Patient Revenue |
|---|---|---|
| Medicaid managed care programs | $1,299,236 | 40.3% |
| NJ uncompensated care | $309,768 | 20.6% |
| Medicaid | $638,246 | 19.1% |
| Uninsured (self-pay) | $955,878 | 10% |
| Private insurance | $88,549 | 6.6% |
| Medicare | $59,152 | 3.4% |

(*Id.* at ¶ 50). Plaintiffs aver that a large portion of OHI's funding came from public sources. (Pl. SOF at ¶ 7).

According to Defendant, for 2012, OHI's audited financial statement shows that non-patient services revenue was $3,734,652, and was derived from the following:

| Source | Amount |
|---|---|
| Dep't of Health & Human Services Grant | $847,424 |
| Contract services and other grants | $1,566,350 |
| In-kind contributions | $1,062,975 |
| Other revenue | $257,903 |

(Def. SOF at ¶ 51).

According to Defendant, The amount attributable to "contract services and other grants" on OHI's audited financial statement relates to non-federal grants and contracts and excludes the Section 330 grant. (*Id.* at ¶52). In 2012, non-federal grants and contracts ("Other Grants and contracts") were as follows:

| Source | Amount |
|---|---|
| Community Medical Center Charity Grant | $950,000 |
| Kimball Medical Center Charity Grant | $400,000 |
| Ocean County Freeholder Grant | $116,970 |
| Other | $99,380 |

(*Id.* at ¶ 53). These private grants composed less than 10.7% of Defendant's revenue in 2012. (Pl. SOF at ¶ 8). Separate from the private and government grants described above, OHI occasionally receives charitable cash and noncash donations, but these donations represent a small portion of OHI's total annual revenue. (*Id.* at ¶ 60-61).

According to Defendant, the amount attributable to "in-kind contributions" includes $942,659 worth of vaccines that were donated to OHI, as well as $120,316 in rent. (*Id.* at ¶54) Defendants also claim that the amount attributable to rent represents the fair market value of rental discounts received from Lakewood Township, because, at the time, OHI leased its building in Lakewood from the Township for $1 a year rather than paying full market rent. (*Id.* at ¶ 54-55). Defendant states that OHI's financial statements typically report bad debt expenses relating to uncollectable patient revenues and report an allowance for patient accounts receivable that are regarded as doubtful. (*Id.* at ¶ 56). In 2012, OHI reported a bad debt expense of $285,387, and a total allowance of $1,489,883. (*Id.* at ¶ 57-58). Defendant considers an account is "doubtful" if it is uncollectable from an uninsured patient below 200% of the federal poverty guidelines. (*Id.* at ¶59).

OHI's audited financial statement for 2013 shows that OHI's total net revenue for 2013 was $14,020,686, and of that revenue, $10,390,474 was net patient service revenue. (*Id.* at ¶ 64-65).

The breakdown for each source of patient revenue for 2013 is as follows:

9

| Source | Amount | Percentage of Patient Revenue |
|---|---|---|
| Medicaid managed care programs | $1,511,082 | 43.8% |
| NJ uncompensated care | $467,933 | 13.6% |
| Medicaid | $707,387 | 20.5% |
| Uninsured (self-pay) | $628,960 | 18.2% |
| Private insurance | $77,629 | 2.3% |
| Medicare | $55,743 | 1.6% |

(*Id.* at ¶ 65). Plaintiff point out that a large portion of the funding is from public sources. (Pl. SOF at ¶ 7).

For 2013, non-patient services revenue was $3,630,212, and was derived from the following:

| Source | Amount |
|---|---|
| Dep't of Health & Human Services Grant | $1,009,822 |
| Contract services and other grants | $1,461,524 |
| In-kind contributions | $894,719 |
| Other revenue | $264,147 |

(Def. SOF at ¶ 66).

OHI's audited financial statement for 2013 reports that non-federal grants and contracts ("contract services and other grants") were as follows:

| Source | Amount |
|---|---|
| Community Medical Center Charity Grant | $950,000 |
| Kimball Medical Center Charity Grant | $400,000 |
| Ocean County Freeholder Grant | $65,024 |
| Other | $46,500 |

(*Id.* at ¶ 67). This amounted to only 10.4% of their total revenue. (Pl. SOF at ¶ 8).

10

For 2013, the amount attributable to "in-kind contributions" consists of $894,719 worth of vaccines that were donated to OHI. (Def. SOF at ¶ 68). OHI's audited financial statement for 2013 reported a bad debt expense of $270,000 and a total allowance of $1,043,736. (*Id.* at ¶ 69).

OHI's audited financial statements for 2013 reflects "other revenue" of $264,147, which represents quality incentive bonuses OHI receives from Medicaid HMO. (*Id.* at ¶ 70).

In both 2012 and 2013, a large amount of OHI's expenses were salaries and fringe benefits. (Pl. SOF at ¶ 6). Salaries of OHI employees are set by the board of director and are in accordance with the National Association of Community Health Centers, as well as comparable to other similarly situated personnel at like FQHCs (Def. SOF at ¶ 71-73).

## II.

*Legal Standard*

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson,* 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey*

*Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, after drawing all inferences in favor of [the non-moving party] and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

III.

*Analysis*

This is a medical malpractice action. At this juncture, Defendant argues that summary judgment should be granted because OHI and its employees are deemed federal employees of the Public Health Service and as such are immune to suit. Further, as a private, non-profit, charitable entity, OHI is entitled to assert the immunities of the NJCIA. Because OHI would not be liable for its individual employees under the absolute immunity provided by Section 7 of the NJCIA, the United States also cannot be held liable for the actions of OHI or its employees.

Defendant argues that OHI and its employees are deemed federal employees of the Public Health Service, 42 U.S.C. 254b, and as such they are immune from suit. *See* 42 U.S.C. 233. (providing that for actions alleging negligence by an employee of the Public Health Service, a

"remedy against the United States" under the FTCA shall be "exclusive of any other civil action or proceedings.") Thus, Defendant believes that OHI and its employees are immune from suit except where that immunity has been waived under FTCA.

Once a health center is deemed a Public Health Service, the exclusive remedy for personal injuries allegedly caused by health center officers and employees acting within the scope of their employment is an action against the United States under the FTCA. *See* 42 U.S.C. 233(a). The applicability of the FTCA does not blindly expand sovereign immunity. *Lomado v. United States*, 667 F.3d 363, 371-72 (3d Cir. 2011). Pursuant to the FTCA, the United States, who stepped in on behalf of OHI and its employees, may assert any state law defenses that would have been available to the original Defendants, namely immunity pursuant section 7 of the NJCIA.

Plaintiff purports that Defendant cannot argue that OHI is organized exclusively for both charitable and hospital purposes because OHI is not a true non-profit entity organized for charitable purposes within meaning of NJCIA. Essentially, the sole purpose of OHI is not as a charitable organization, but instead, as a hospital. Further, OHI's 501(c)(3) tax status and its corporate documents do not provide automatic immunity.

> New Jersey initially adopted the doctrine of charitable immunity in *D'Amato v. Orange Memorial Hospital,* 101 N.J.L. 61, 127 A. 340 (N.J. 1925) (barring a negligence suit against a corporation established to maintain a public charitable hospital). In 1958, however, the New Jersey Supreme Court abolished the doctrine, finding that it "had no sound English common law antecedents and [had] found its way into American law by misconception." *Collopy v. Newark Eye & Ear Infirmary*, 27 N.J. 29, 141 A.2d 276, 287 (1958); see also Benton v. Y.M.C.A., 27 N.J. 67, 141 A.2d 298 (N.J. 1958); Dalton v. St. Luke's Catholic Church, 27 N.J. 22, 141 A.2d 273 (N.J. 1958). The *Collopy* court further noted that charitable immunity "runs counter to widespread principles which fairly impose liability on those who wrongfully and negligently injure others." *Collopy*, 141 A.2d at 287.

*Nazzaro v. United States*, 304 F. Supp. 2d 605, 610 (D.N.J. 2004).

After the New Jersey Supreme Court repudiated the doctrine, however, the New Jersey Legislature introduced and passed bills to reinstate it. *Id.* The enactment of NJCIA reaffirmed that

the immunity was designed to preserve charitable trust funds, to encourage private philanthropic activity in order to assure the continued provision of services that benefit the general welfare, and to relieve the government of the burden of providing those services. *Ryan v. Holy Trinity Evangelical Lutheran Church*, 175 N.J. 333, 815 A.2d 419, 425-26 (N.J. 2003).

"The NJCIA provides immunity from tort liability where the entity being sued: (1) is a non-profit corporation; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was advancing those purposes 'at the time of the injury to plaintiff who was then a beneficiary of the charitable work.'" *Nazzaro*, 304 F. Supp. 2d at 610 (citation omitted). The statute's language states:

> No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.

N.J.S.A. § 2A:53A-7(a).

In this case, Plaintiff disputes the non-profit status of the hospital and counters that they do not have sufficient information to make such a determination.

> A determination of whether an entity is organized solely for charitable, religious or educational purposes is made on a case-by-case basis and requires a fact-sensitive inquiry which looks "beyond [an entity's] benevolent acts." *Ryan*, 815 A.2d at 425; *see also Presbyterian Homes v. Div. of Tax Appeals*, 55 N.J. 275, 261 A.2d 143, 148 (N.J. 1970) (noting that the "term 'charity' in a legal sense is a matter of description rather than a precise definition"). Courts have found the analysis simpler where an organization serves solely educational or religious purposes, because "the terms 'educational' and 'religious' have plain meanings that are subject to literal reading." *Abdallah v. Occupational Ctr. of Hudson County, Inc.*, 351 N.J. Super. 280, 798 A.2d 131, 133 (N.J. Super. Ct. App. Div. 2002). Where an

14

organization claims a "charitable" purpose, however, "what is required is an examination of the entity seeking to clothe itself in the veil of charitable immunity to discover its aims, its origins, and its method of operation in order to determine whether its dominant motive is charity or some other form of enterprise." *Parker v. St. Stephen's Urban Dev. Corp., Inc.*, 243 N.J. Super. 317, 579 A.2d 360, 364 (N.J. Super. Ct. App. Div. 1990).

*Nazzaro*, 304 F. Supp. 2d at 611. Where organizations receive federal funding, the Court engages in a fact sensitive inquiry. *Id.* In prior cases, New Jersey Courts have denied immunity where an organization serves "purely as a conduit for federal funds." *Parker*, 579 .2d at 366. However, Courts have also noted that receiving federal funds does not bar immunity if the organization still perform charitable services and its "essentially supported through charitable contributions." *Morales v. New Jersey Academy of Aquatic Sciences*, 302 N.J. Super. 50, 694 A.2d 600, 602-03 (N.J. Super. Ct. App. Div. 1997).

Plaintiff argues that NJCIA should not be available to OHI or its employees because it would not be available if they had been sued directly or under the theory of respondent superior. The Court will review whether the statute applies to the hospital and its employees. Specifically, whether it (1) is a non-profit corporation; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was advancing those purposes 'at the time of the injury to plaintiff who was then a beneficiary of the charitable work.'" *Nazzaro*, 304 F. Supp. 2d at 610 (citation omitted). OHI is organized as a nonprofit corporation, however, it is not organized for religious, charitable, or educational purposes. While OHI does receive some donations, Defendant acknowledges that they are not a major part of OHI's funding. In fact, the bulk of their funding comes from various public sources. The intent of NJCIA was to protect truly charitable institutions, and here, OHI, while acting benevolently, is mainly receiving money from the government for services rendered. Thus, OHI and its employees would not be entitled to absolute immunity under the NJCIA.

Furthermore, Defendant concedes that the argument proposed for absolute immunity is contrary to this Court's recent holdings in other medical malpractice matters involving federally qualifies health centers. In those matters, as here, the United States argued that it was absolutely immune from suit under Section 7 of the NJCIA and in the alternative that its liability should be capped under Section 8 of NJCIA because the federally qualified health center was a nonprofit entity organized exclusively for hospital purposes. In those cases, the Court denied the motions for absolute immunity under Section 7 but granted damages cap pursuant to Section 8. *See Gremminger v. United States*, 2017 WL 1882472, at *6-10 (D.N.J. March 29, 2017) (reviewing recent District Court and New Jersey decisions in similar cases.)

In the alternative, Defendant argues that they should be entitled to partial summary judgment and a damages cap under Section 8 because OHI is organized for "hospital purposes" under N.J.S.A. 2A:53A-8. The NJCIA protects non-profit entities that are exclusively organized for "hospital purposes." *See* N.J.S.A. 2A:53A-8. In that regard, the NJCIA limits their tort liability in the form of a $250,000 cap on damages:

> Notwithstanding the provisions of [N.J.S.A. 2A:53A-7], any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $250,000, together with interest and costs of such suit[.]

N.J.S.A. 2A:53A-8. "The most prominent distinction between nonprofit entities organized exclusively for charitable, religious, or educational purposes and nonprofits organized exclusively for hospital purposes is that the former are immune from liability while the latter are subject to liability for negligence, albeit with a cap on its damage. [...] Stated differently, "if a nonprofit is organized 'exclusively for hospital purposes,' then no absolute immunity can apply." *Gremminger*, 2017 U.S. Dist. LEXIS 46390 at *13. (citations omitted). OHI provides numerous hospital services

to underprivileged individuals in the community, including preventative care, primary care, immunizations, free diabetes testing, and even free skin cancer screenings. These functions are akin to functions a hospital would perform, and therefore, OHI would be entitled to the damages cap set forth in section 8 of NJCIA. Because OHI is entitled, Defendant, standing in its stead, would also be entitled to the damages cap.

Defendant has admitted that recent decisions by this Court, in similar cases have denied immunity and granted summary judgment in part as to a damages cap. Based on the parties' submissions, this reasoning should apply in this matter.

## ORDER

This matter, having been brought before the Court by Defendants' motion for summary judgment, or in the alternative, a motion for partial summary judgment for a damage cap (ECF No. 18) and the Court having considered the briefs and submissions of the parties, and having heard oral argument;

IT IS on this 14th day of August, 2018;

**ORDERED** that Defendant United States' motion for summary judgment for absolute immunity is DENIED.

**ORDERED** that Defendant United States' motion for partial summary judgment to impose a damage cap in accordance with N.J.S.A. 2A:53A-8 is GRANTED.

_____
PETER G. SHERIDAN, U.S.D.J.